**FILED**

MAR 2 0 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | JUDGE JOAN H. LEFKOW |
| ) | No. 08CR 236 |
| v. ) | |
| ) | Violations: Title 18, United States |
| ROSS WEISSENHOFER ) | Code, Sections 1343, 1344 |
| ) | MAGISTRATE JUDGE MASON |

### COUNT ONE

The SPECIAL JUNE 2007 GRAND JURY charges:

1. At times material to this indictment:

    a. The Small Business Administration ("SBA") was an agency of the United States established by Congress, through the Small Business Act of 1953 (15 U.S.C. § 631, *et seq.*), to provide financial, technical and management assistance to qualified small businesses.

    b. The "7(a) Loan Guaranty Program" of the Small Business Act, 15 U.S.C. § 635(a), authorized the SBA to provide financial assistance to eligible, credit-worthy start-up and existing small businesses through loan guarantees to participating lenders. If a loan made by a participating lender to a borrower met certain SBA requirements, the SBA would guarantee a percentage of that loan against default by the borrower.

2. Before a borrower could obtain a loan guaranteed by the SBA, the borrower had to truthfully complete certain forms, including an "Application for Business Loan" (SBA Form 4) and a "Statement of Personal History" (SBA Form 912), that requested information

regarding the ownership of the business to receive the loan and the borrower's background, including his criminal history. The ownership composition of the business and the borrower's criminal history were material to the determination by the SBA and its participating lenders of the loan applicant's credit worthiness.

3. CIT Small Business Lending Corporation ("CIT") was a preferred loan provider of the SBA. As a preferred loan provider, CIT processed and approved applications for SBA-guaranteed loans to small businesses. Once approved, CIT provided the funds for the loan, a portion of which would be guaranteed by the SBA under the 7(a) Loan Guaranty Program.

4. On September 25, 2002, defendant ROSS WEISSENHOFER was charged in a criminal complaint issued in the Circuit Court for the Sixteenth Judicial Circuit of Kane County with theft by deception, in violation of 720 ILCS 5/16-1(a)(2). On September 26, 2002, WEISSENHOFER was arrested in connection with the criminal complaint.

5. Beginning on or about October 28, 2002, and continuing through on or about January 21, 2003, at Chicago and elsewhere, in the Northern District of Illinois, Eastern Division,

ROSS WEISSENHOFER,

defendant herein, did devise, intend to devise, and participate in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises from CIT, which scheme is further described in the following

2

paragraphs.

6. It was part of the scheme that, for the purpose of financing his purchase of a company called Secure Sealants, Inc. ("Secure Sealants") through CIT as part of the 7(a) Loan Guaranty Program, defendant WEISSENHOFER made false representations to CIT regarding his criminal history and his prospective ownership interest in Secure Sealants.

7. It was further part of the scheme that, on or about October 28, 2002, defendant WEISSENHOFER submitted a "Statement of Personal History" to CIT in which WEISSENHOFER falsely answered "no" to the following question:

> Have you ever been charged with and or arrested for any criminal offense other than a minor motor vehicle violation? Include offenses which have been dismissed, discharged, or not prosecuted (All arrests and charges must be disclosed and explained on an attached sheet.)

As defendant WEISSENHOFER was well aware, he had been charged in a criminal complaint with theft by deception on September 25, 2002, and had been arrested in connection with the criminal complaint on September 26, 2002.

8. It was further part of the scheme that, on or about December 13, 2002, WEISSENHOFER, for the purpose of acquiring Secure Sealants, submitted to CIT an "Application for Business Loan" in the amount of $660,000. On the "Application for Business Loan," WEISSENHOFER falsely stated that his percentage of ownership in Secure Sealants would be 100 percent. In reality, as defendant WEISSENHOFER well knew, he had already sold a 14 percent ownership interest in Secure Sealants for $80,000 to Individuals A and B.

9. It was further part of the scheme that, on or about January 21, 2003, for the purpose of fraudulently causing CIT to believe that he owned the entire business, WEISSENHOFER submitted an Affidavit in connection with the closing of the loan from CIT for $660,000. In the Affidavit, WEISSENHOFER falsely stated that his ownership interest in Secure Sealants was as stated in the "Application for Business Loan" and such ownership had not changed since the "Application for Business Loan" was submitted.

10. It was further part of the scheme that, based in part on the materially false statements provided to CIT by defendant, CIT approved and funded a $660,000 loan to WEISSENHOFER and Secure Sealants, the proceeds of which were disbursed to WEISSENHOFER and Secure Sealants.

11. It was further part of the scheme that, defendant WEISSENHOFER concealed, misrepresented, and hid the existence and purpose of the scheme and the acts done in furtherance of the scheme.

12. On or about January 21, 2003, at Chicago, in the Northern District of Illinois, Eastern Division,

ROSS WEISSENHOFER,

defendant herein, did knowingly cause to be transmitted in interstate commerce from New York, New York, to Chicago, Illinois, by means of wire and radio communications, certain writings, signs and signals, namely: a wire transfer of approximately $660,000 from an account held by CIT at Chase Manhattan Bank in New York, New York, to an account at

American National Bank and Trust Company of Chicago held by Attorney's Title Guaranty Fund, Inc., for the closing of a loan from CIT to WEISSENHOFER and Secure Sealants in the amount of approximately $660,000;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraph 1 of Count One of this indictment, as though fully set forth herein.

2. Great Lakes Bank located in Orland Park, Illinois, and elsewhere, was a financial institution with deposits insured by the Federal Deposit Insurance Corporation. Great Lakes Bank was a certified loan provider of the SBA. As a certified loan provider, Great Lakes Bank processed and approved applications for SBA-guaranteed loans to small businesses. Once approved, Great Lakes Bank provided the funds for the loan, a portion of which would be guaranteed by the SBA.

3. The SBA and participating lenders maintained guidelines for making loans. As a condition of the loan, the loan applicant generally was required to contribute a portion of the purchase price. The loan applicant's ability to make this "equity injection" was material to the determination by the SBA and its participating lenders of the loan applicant's credit worthiness.

4. On or about December 2, 2002, at Orland Park, in the Northern District of Illinois,

ROSS WEISSENHOFER,

defendant herein, knowingly executed and attempted to execute a scheme to defraud a financial institution, namely, Great Lakes Bank, and to obtain money and funds owned by

and under the custody and control of Great Lakes Bank, by means of materially false and fraudulent pretenses, and representations, which scheme is further described in the following paragraphs.

5. It was part of the scheme that, on or about August 6, 2002, defendant WEISSENHOFER submitted an application to Great Lakes Bank for a $200,000 loan as part of the 7(a) Loan Guaranty Program. The purpose of the loan was to fund WEISSENHOFER's purchase of a business, namely, Walker's Contractors Equipment Rental, Inc. ("Walker's Equipment").

6. It was further part of the scheme that, on or about August 15, 2002, Great Lakes Bank approved the loan subject to SBA's agreement to guarantee part of the loan pursuant to the 7(a) Loan Guaranty Program.

7. It was further part of the scheme that, on or about October 29, 2002, the SBA agreed to guaranty up to 75 percent of the $200,000 loan from Great Lakes Bank to WEISSENHOFER subject to certain conditions. One of the conditions was that prior to disbursement of the loan, Great Lakes Bank was to obtain evidence that WEISSENHOFER had injected at least $27,000 cash into Walker's Equipment as equity capital.

8. It was further part of the scheme that, on or about December 2, 2002, for the purpose of causing Great Lakes Bank to believe that at least $27,000 in cash had been invested in his business and that he had fulfilled the "equity injection" requirement of the SBA, defendant WEISSENHOFER altered a canceled check that had been made payable to Walker's Equipment in the amount of $1,880 to make it falsely appear as though the check had been made payable to Walker's Equipment in the amount of $27,880.

9. It was further part of the scheme that, on or about December 2, 2002, for the purposes of receiving the $200,000 loan from Great Lakes Bank, defendant WEISSENHOFER submitted the falsified, canceled check made payable to Walker's Equipment for the altered amount of $27,880 to Great Lakes Bank as evidence that WEISSENHOFER had fulfilled the "equity injection" requirement of the SBA.

10. It was further part of the scheme that, based, in part, on the falsified, altered check submitted by WEISSENHOFER, on or about December 2, 2002, Great Lakes Bank approved WEISSENHOFER's loan application and provided WEISSENHOFER with a loan of approximately $200,000 to fund the purchase of Walker's Equipment.

11. It was further part of the scheme that, WEISSENHOFER concealed, misrepresented, and hid the existence and purpose of the scheme and the acts done in furtherance of the scheme.

12. On or about December 2, 2002, at Orland Park, in the Northern District of Illinois, Eastern Division,

ROSS WEISSENHOFER,

defendant herein, did knowingly execute and attempt to execute the above-described scheme by submitting, in connection with his loan application, an altered canceled check to Great Lakes Bank, payable to Walker's Equipment, purportedly in the amount of $27,880;

In violation of Title 18, United States Code, Section 1344.

A TRUE BILL:

_____
FOREPERSON


_____
UNITED STATES ATTORNEY